William **WALKER**, Plaintiff,

v.

Thomas **BAIN**, and Janice Metzger, **Defendants.**

No. 95–CV–76273–DT.

United States District Court, E.D. Michigan, Southern Division.

Aug. 3, 1999.

Order Denying Reconsideration Aug. 30, 1999.

Deric J. Bomar, Dykema Gossett, PLLC, Detroit, MI, for Plaintiff.

Lamont M. Walton, Leo H. Friedman, Asst. Attys. Gen., Lansing, MI, for Defendants.

*OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEY FEES AND ALLOWING DEFENDANTS ADDITIONAL TIME TO FILE A SUPPLEMENTAL RESPONSE*

KOMIVES, United States Magistrate Judge.

## Table of Contents

I. Introduction .................................................... 595
II. Attorney Fees Under § 1988 & the PLRA Generally ......................... 596
 A. *Section 1988 Generally* .............................................. 596
 B. *The PLRA Attorney Fee Provisions* ................................. 596
 C. *Application to Pending Cases Generally* ........................... 598
III. Plaintiff's Vagueness Challenge ........................................ 598
IV. Plaintiff's Equal Protection Challenge ................................. 599
 A. *Generally* .......................................................... 599
 B. *Illegitimate Governmental Interests* ............................. 600
 C. *Legitimate Governmental Interests* ............................... 601
 D. *Rational Relationship Between Interests and Distinction* .......... 602
 1. *Deterring Frivolous Filings* .................................. 602
 2. *Protecting the Public Fisc* ................................... 603
 E. *Conclusion* ......................................................... 605
V. Order ............................................................ 606

## I. Introduction

Plaintiff William Walker, a state prisoner, commenced this action against defendants Thomas Bain and Janice Richter (also referred to as Janice Metzger), corrections officers, alleging that defendants retaliated against him for filing grievances and lawsuits. The case was tried to a jury before the undersigned pursuant to 28 U.S.C. § 636(c). On April 23, 1999, the Court entered an amended judgment in favor of plaintiff and against defendants jointly and severally in the amount of $1.00; in favor of plaintiff and against defendant Bain in the amount of $300.00; and in favor of plaintiff and against defendant Richter in the amount of $125.00.[1]

On May 7, 1999, plaintiff filed this motion for attorney fees[2] pursuant to 42 U.S.C. § 1988 and FED.R.CIV.P. 54(d). Plaintiff seeks $36,046.25 in fees. Defendants filed a response on June 9, 1999, arguing that, pursuant to section 803 of the Prison Litigation Reform Act (PLRA), plaintiff is entitled to a fee of only $629.00. Plaintiff filed a reply brief on July 16, 1999, arguing that the PLRA's attorney fee cap is unconstitutional both on vague-

---

1. The procedural history leading to the entry of the amended judgment is detailed in my Opinion and Order, entered this date, denying plaintiff's motion for partial new trial.

2. As the Sixth Circuit noted in *Stallworth v. Greater Cleveland Regional Transit Authority*, 105 F.3d 252, 253–54 n. 1 (6th Cir.1997), a threshold matter of style and usage is presented by plaintiff's motion. It is not clear whether it is more proper to refer to "attorney fees," "attorneys fees," "attorney's fees," or "attorneys' fees." Noting that statutes and court rules use these forms interchangeably,

the court concluded that "[i]n line with the statute we are interpreting, we will use 'attorney fees' in this case, except where quoting other authorities." *Id.* In *Ridder v. City of Springfield*, 109 F.3d 288 (6th Cir.1997), the court decided to use "attorney fees" even though the statute and rule at issue used different terminology. The court reasoned: "Finding uniform terminology advantageous, we shall adhere to *Stallworth's* use of 'attorney fees.'" *Ridder*, 109 F.3d at 290 n. 1. In light of this precedent, this Opinion will use "attorney fees" except where quoting other authorities.

ness and equal protection grounds. For the reasons that follow, I conclude that the provision of the PLRA limiting attorney fees to 150% of the monetary judgment awarded violates the right of prisoners to the equal protection of the laws, and thus is not applicable here.

## II. Attorney Fees Under § 1988 & the PLRA Generally

Before addressing the constitutionality of the PLRA fee cap provision, it is appropriate to discuss, in some detail, the attorney fee structure of 42 U.S.C. § 1988, both in general and as amended by the PLRA.

### A. *Section 1988 Generally*

■ Section 1988 provides, in relevant part, that "[i]n any action or proceeding to enforce a provision of section[ ] ... 1983 ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). The purpose of this provision "is to ensure effective access to the judicial process for persons with civil rights claims, and to encourage litigation to enforce the provisions of the civil rights acts and constitutional civil rights provisions." *Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3d Cir. 1998); *see also, Ortiz v. Regan*, 980 F.2d 138, 140 (2d Cir.1992). Thus, although the decision to award fees is left to the trial court's broad discretion, which is given substantial deference by the appellate courts, *see Hadix v. Johnson*, 65 F.3d 532, 534 (6th Cir.1995) ("*Hadix I*"), the court's discretion "must be guided by the statutory presumption that fees should be awarded to successful plaintiffs absent unusual circumstances." *Williams v. Hanover Housing Auth.*, 113 F.3d 1294, 1300 (1st Cir.1997). As the Supreme Court has directed, "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (internal quotation omitted).

■ Under the statute, a prevailing party is entitled to a "reasonable attorney's fee." In determining the reasonableness of a fee, a court generally applies the "lodestar" formula. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). Under the lodestar approach, the appropriate starting point "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). This figure is strongly presumed to represent a reasonable fee, but the court may adjust it upward or downward based on other considerations. *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. In determining the proper hourly rate under the lodestar approach, a court must try to determine the "prevailing market rates in the relevant community" for the service rendered. *Blum v. Stenson*, 465 U.S. 886, 895–96 & n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). A number of factors may be considered by the court in making this determination. However, "the actual rate that applicant's counsel can command in the market is itself highly relevant proof of the prevailing community rate." *National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1326 (D.C.Cir.1982). Probably the best evidence of a reasonable rate is the rate ordinarily charged by plaintiff's attorney. *Id.* at 1325; *see also, Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987); *Detroit v. Grinnell Corp.*, 495 F.2d 448, 473 (2d Cir.1974).

### B. *The PLRA Attorney Fee Provisions*

Although the lodestar method provides the correct approach for determining a reasonable attorney fee under § 1988 generally, the amount which may be awarded in a case brought by a prisoner is now capped. Specifically, both the availability of fees and their amount have been restricted by section 803 of the PLRA, which amended 42 U.S.C. § 1997e to provide, in relevant part, as follows:

(1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that—

(A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and

(B)(i) the amount of the fee is proportionately related to the court ordered relief for the violation; or

(ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

(2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.

(3) No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18, for payment of court-appointed counsel.

42 U.S.C. § 1997e(d).

 Few courts have considered the substance of these provisions, addressing rather the preliminary question of whether these provisions apply to cases pending at the time the PLRA was enacted. Specifically, no court has examined the framework for analyzing fees requests. However, after harmonizing the general approach of § 1988 with the more specific requirements of § 1997e(d), and engaging in a bit of streamlining, I conclude that the following approach is proper:

- First, the court should determine whether plaintiff is eligible for an award of attorney fees by determining whether he is a prevailing party under § 1988.

- Second, the court should calculate the lodestar method in the ordinary fashion. In making this calculation, however, the court must: (a) limit the hourly rate sought to the lesser of the prevailing market rate (normally applied under § 1988) or the maximum provided in § 1997e(d)(3); and (b) limit the hours sought to only those hours which were "directly and reasonably incurred in proving an actual violation of the plaintiff's rights" as required by § 1997e(1)(A).

- Third, the court should determine whether the amount of the fee determined from the first two steps is proportionate to the relief obtained under § 1997e(d)(1)(B).

- Fourth, if a monetary judgment was awarded the court must, in accordance with § 1997e(d)(2), apply some portion of the judgment, not greater than 25%, to satisfy the attorney fee award and limit the total award to 150% of the judgment.

*Cf. Clark v. Phillips*, 965 F.Supp. 331, 333–38 (N.D.N.Y.1997) (employing a similar analysis).

Plaintiff contends that the last step of the above analysis is not dictated by the statute. In his view:

Given Congress' failure to indicate that "no award" of attorney fees should be paid by a defendant where the award of attorney fees is greater than 150 percent of the judgment, the more reasonable interpretation is that defendant shall pay the entire excess of any award of attorney fees, where the fee award *is not greater* than 150 percent of the judgment. The "excess" portion of § 1997e(d)(2) simply does not apply to the facts of this case where an award of attorney fees *is greater* than 150 percent. If Congress intended the PLRA to apply to such a situation, it would have explicitly indicated it in the provision. Because the "excess" portion of § 1997e(d)(2) does not apply to this case, Defendants remain responsible for a

reasonable attorney fee, after 25 percent of the Judgment is applied to satisfy the attorney fee award.

Pl.'s Reply Br., at 3–4. Plaintiff's argument misses the mark. The provision clearly contains two limits on an attorney fee award: (1) a limit on the amount of the judgment which can be used to satisfy an attorney fee award; and (2) a limit on the amount of an award for which a defendant may be liable. Under the plain language of the statute a defendant is liable for only the difference between the 150% limit and the amount of the judgment used to satisfy the fee award. It is true, as plaintiff suggests, that nothing in the provision caps the amount of the award which the Court can make. Thus, for example, a court could theoretically make an award of fees that is 1000% of the judgment. However, there are only two sources from which such an award can be paid: the judgment and the defendants. The amount that may be taken from each of these sources is limited, the first to 25% of the judgment and the latter to 150% of the judgment. Thus, while nothing in the statute would prevent a court from making an award of more than 150% of the judgment in theory, in practice such an award would be meaningless. Plaintiff's theory would render the 150% cap meaningless, and accordingly must be rejected.

## C. *Application to Pending Cases Generally*

 As discussed above, section 803 of the PLRA limits the amount of attorney fees which may be awarded a prevailing plaintiff in a § 1983 suit where the plaintiff is a prisoner. Although the Sixth Circuit had ruled that this provision does not apply to any services performed on cases filed prior to the effective date of the Act (April 26, 1996), regardless of the date the services were rendered, *see Hadix v. Johnson,* 143 F.3d 246, 250–56 (6th Cir. 1998) ("Hadix II"), that decision has just been reversed, in relevant part, by the Supreme Court. In *Martin v. Hadix,* 527 U.S. 343, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999). In *Martin,* the Supreme Court

agreed with the Sixth Circuit that the PLRA cap does not apply to services which were performed by an attorney prior to the effective date of the PLRA. *See id.* at 2006–07. However, the Court also concluded, contrary to the Sixth Circuit, that the fee cap applies to services provided after the effective date of the Act, even if the attorney had been retained and the case filed prior to the effective date. *Id.* at 2007–08. Because all of the work performed by plaintiff's attorney in this matter post-dates the enactment of the PLRA, *see* Pl.'s Mot. for Attorney Fees, Ex. C, plaintiff's request for fees is governed by section 803 of the PLRA, to the extent that it is constitutionally valid.

## III. Plaintiff's Vagueness Challenge

Plaintiff argues in his reply that, to apply this provision in the manner suggested by defendants would be unconstitutional for two reasons: (1) the provision is unconstitutionally vague; and (2) it violates the Equal Protection Clause of the Fourteenth Amendment.

 Plaintiff's vagueness argument is premised on his contention that the 150% cap contained in § 1997e(d)(2) is unclear. As explained in part II, *supra,* I reject this argument, and thus plaintiff's vagueness challenge must fail. Further, the void-for-vagueness doctrine is inapplicable to § 1997e(d)(2). As plaintiff correctly notes, a statute may be unconstitutionally vague, and thus violate due process, if "men of common intelligence must necessarily guess at its meaning and differ as to. its application[.]" *Connally v. General Const. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). However, as the Supreme Court has explained, "[t]he essential purpose of 'void for vagueness' doctrine is to warn individuals of the criminal consequences of their conduct." *Jordan v. De George,* 341 U.S. 223, 230, 71 S.Ct. 703, 95 L.Ed. 886 (1951). Thus, "[t]he doctrine's chief application is in respect to criminal legislation" and legislation impinging First

Amendment rights. *Lopez–Lopez v. Aran*, 844 F.2d 898, 901 (1st Cir.1988); *see also, Waterman v. Farmer*, 183 F.3d 208, 212 n. 4, (3d Cir.1999). In short, "the void for vagueness doctrine [has] little or no application outside of the first amendment or criminal contexts." *Exxon Corp. v. Georgia Ass'n of Petroleum Retailers*, 484 F.Supp. 1008, 1014 (N.D.Ga. 1979).[3]

 As the Supreme Court has repeatedly explained, the purpose of the vagueness doctrine is to fairly apprise individuals of the criminal, and occasionally civil, consequences of their actions, so that they may conform their conduct to those standards. *See Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Jordan*, 341 U.S. at 230, 71 S.Ct. 703. Here, § 1997e(d)(2) does not proscribe any conduct; rather, it governs the standards a court must use in imposing attorney fees in a particular class of cases. Essentially, plaintiff's argument is that the law is vague because it requires the Court to engage in statutory interpretation. However,

> [t]he very business of courts is interpretation of statutes. Were the mere existence of uncertainty as to a law's construction or application to mean the law was fatally vague, there would be very

few laws left on the books. Where an ordinary civil statute can reasonably be interpreted and limited by judicial construction, it will withstand a vagueness challenge.

*Exxon Corp.*, 484 F.Supp. at 1015. Here, § 1997e(d)(2) is sufficiently clear to allow the Court to determine the standards governing an award of fees in this case. Accordingly, I conclude that § 1997e(d)(2) is not unconstitutionally vague.

### IV. Plaintiff's Equal Protection Challenge

#### A. *Generally*

 Second, plaintiff argues that section 803 violates the Equal Protection Clause[4] because it discriminates between prisoners and non-prisoners. Plaintiff argues that heightened scrutiny is appropriate "because it relates to an essential right—the right to counsel." Pl.'s Reply Br., at 4, and that even if rational basis review is applied the provision fails. I conclude that heightened scrutiny is not appropriate. As the Supreme Court's cases make clear, strict scrutiny is applicable only where the regulation being challenged "operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly

3. A search of the Westlaw database yields 91 Supreme Court cases in which the word "void" appears in the same sentences as "vague" or "vagueness." Fifty-one of these cases substantively addressed the vagueness issue, either in the principal opinion or in a concurring or dissenting opinion. Of these, only four cases arose outside the criminal law or First Amendment context. In each case, however, the context was sufficiently similar to the concerns underlying application of the vagueness doctrine in the criminal and First Amendment contexts to justify application of the doctrine. *See Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (ordinance which, although not criminal, imposed civil fines); *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982) (ordinance regulation licenses for operating coin-operated amusement establishments); *Boutilier v. Immigration & Naturalization Serv.*, 387 U.S. 118, 87 S.Ct. 1563, 18 L.Ed.2d

661 (1967) (regulation which would result in deportation); *Jordan v. DeGeorge*, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886 (1951) (same). In each of these four cases, although the Court addressed the vagueness issue, the Court upheld that law at issue.

4. Actually, the Equal Protection Clause of the Fourteenth Amendment has no application here because, by its terms, the Fourteenth Amendment applies only to the states, and the PLRA is a federal enactment. However, the Supreme Court has held that the Due Process Clause of the Fifth Amendment, which is applicable to the federal government, contains an equal protection component identical to the Fourteenth Amendment. *See Mathews v. De Castro*, 429 U.S. 181, 182 n. 1, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976) (citing *Weinberger v. Salfi*, 422 U.S. 749, 768–770, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)); *Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

protected by the Constitution[.]" *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 17, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *see also, Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992); *Regents of University of Cal. v. Bakke*, 438 U.S. 265, 357, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978). The first category is inapplicable here because "indigent prisoners are not a suspect class." *Rodriguez v. Cook*, 169 F.3d 1176, 1179 (9th Cir.1999) (citing *Harris v. McRae*, 448 U.S. 297, 323, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980)); *accord Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir.1998) (citing *Harris, supra*); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir.1997). Nor is a fundamental right implicated by § 1997e(d)(2), contrary to plaintiff's argument. Although there is fundamental constitutional right to counsel in criminal cases, *see* U.S. CONST. amend. VI, there is "no constitutional right to appointed counsel in a civil case." *Abdur–Rahman v. Michigan Dep't of Corrections*, 65 F.3d 489, 492 (6th Cir.1995). Accordingly, because § 1997e(d)(2) burdens neither a suspect class of persons nor a fundamental right, it is subject only to rational basis review.

Nevertheless, I conclude that § 1997e(d)(2) is unconstitutional even under the deferential rational basis review. Under this review, a law is valid if it "rationally furthers a legitimate [governmental] interest." *Nordlinger*, 505 U.S. at 10, 112 S.Ct. 2326; *accord San Antonio Independent School Dist.*, 411 U.S. at 17, 93 S.Ct. 1278. This test would require me to reject plaintiff's equal protection challenge "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (internal quotations omitted). Although this is a deferential standard, it "is not a toothless one." *Mathews v. Lucas*, 427 U.S. 495, 510, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976). As the Supreme Court has consistently held, "arbitrary and irrational discrimination violates the Equal Protection Clause under even [the] most deferential standard of review." *Bankers Life & Casualty Co. v. Crenshaw*, 486 U.S. 71, 83, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988); Thus, a law will fail under rational basis review if " 'the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [legislature's] actions were irrational.' " *Gregory v. Ashcroft*, 501 U.S. 452, 471, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) (quoting *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979)); *accord City of Cleburne, Tex. v. Cleburne Living Center, Inc.*, 473 U.S. 432, 446, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (government "may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational."). Further, the question is not whether there is a rational basis for a law in general; rather, the question is "whether there is an appropriate governmental interest suitably furthered by the differential treatment." *Police Dep't v. Mosley*, 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972).

### B. *Illegitimate Governmental Interests*

Before addressing the legitimate governmental interests which may underlie the distinction between prisoners and nonprisoners embodied in § 1997e(d)(2), I pause to note that there is one conceivable purpose underlying the statute which is not legitimate: to deprive prisoners *qua* prisoners of the opportunity to obtain an award of attorney fees on the same basis as other civil rights litigants. If such a purpose underlies § 1997e(d)(2), it would not reflect a legitimate governmental interest. As the Supreme Court has made clear, a " 'bare congressional desire to harm a politically unpopular group' " is not a legitimate state interest. *Weinberger v. Salfi*, 422 U.S. 749, 772, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (quoting *United States Dept. of Agriculture v. Moreno*, 413 U.S. 528, 534, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973)); *accord City of Cleburne*, 473 U.S. at 446–47, 105 S.Ct. 3249. Indeed, this

reasoning is particularly appropriate here, as prisoners are not only a politically unpopular group, but a group which has no recourse to the legislative process to overturn disadvantageous laws. *See McCarthy v. Madigan,* 503 U.S. 140, 153, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (quoting *Yick Wo v. Hopkins,* 118 U.S. 356, 370, 6 S.Ct. 1064, 30 L.Ed. 220 (1886)) ("Because a prisoner is ordinarily divested of the privilege to vote, the right to file a court action might be said to be his remaining most 'fundamental political right, because preservative of all rights.' ").

■ Nor can such an interest be legitimatized by arguing that prisoners and nonprisoners are not similarly situated for equal protection purposes, at least as relates to the statute at issue here. *See City of Cleburne,* 473 U.S. at 439, 105 S.Ct. 3249 (equal protection requires that all persons "similarly situated" be treated alike). While prisoners and nonprisoners are not similarly situated in many respects, for purposes of pursing civil rights litigation the two groups are similarly situated. As the Supreme Court has recognized, " '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights[.]' " *Bell v. Wolfish,* 441 U.S. 520, 545–46, 99 S.Ct. 1861, 60 L.Ed.2d 447 (quoting *Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948)). However, this retraction is only " 'justified by the considerations underlying our penal system,' " *Bell,* 441 U.S. at 546, 99 S.Ct. 1861 (quoting *Price,* 334 U.S. at 285, 68 S.Ct. 1049), and thus extends only so far as the right or privilege is inconsistent with either "the fact of confinement [or] the legitimate goals and policies of the penal institution," *id.,* namely "deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). These considerations do not justify treating prisoners, in general, differently in terms of their ability to pursue litigation, or of their entitlement to remedies afforded other litigants. *See Nicholas v. Riley,* 874 F.Supp. 10, 12 (D.D.C.1995)

("So far as treating prisoners differently than nonprisoners is concerned, ... discrimination on account of Plaintiff's status *qua* prisoner merits rational basis review."). Thus, I must examine any legitimate governmental interests underlying the fee provision, and determine whether the distinction drawn between prisoners and nonprisoners is rationally related to those interests. *See id.* (citing *Moran v. United States,* 18 F.3d 412, 413 (7th Cir. 1994);) *see also, Mosley,* 408 U.S. at 95, 92 S.Ct. 2286 (question in equal protection case is "whether there is an appropriate governmental interest suitably furthered by the differential treatment.")

*C. Legitimate Governmental Interests*

As explained above, I must first identify the purposes underlying the distinction drawn by § 1997e(d)(2) between prisoners and non-prisoners pursuing civil rights claims in the federal courts, and determine whether these interests are legitimate. In making this inquiry, it is not necessary that Congress "actually articulate at any time the purpose or rationale supporting its classification," *Nordlinger,* 505 U.S. at 15, 112 S.Ct. 2326, and I must attempt to identify any possible interests served by the classification. This does not require me to engage in flights of fancy; rational basis review "does require that a purpose may conceivably or 'may reasonably have been the purpose and policy' of the relevant governmental decisionmaker." *Id.* (quoting *Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 528–29, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959)); *see also, Heller,* 509 U.S. at 318–19, 113 S.Ct. 2637 ("[T]he standard of rationality ... must find some footing in the realities of the subject addressed by the legislation.").

There is no legislative history which specifically relates to the attorney fee provision. However, the legislative history of the PLRA in general makes it clear that the primary purpose of the Act was to discourage frivolous prisoner lawsuits. As the Sixth Circuit has explained, "[t]he leg-

islation was aimed at the skyrocketing number of claims filed by prisoners—many of which are meritless—and the corresponding burdens those filings have placed on the federal courts." *Hampton,* 106 F.3d at 1286. The Sixth Circuit has recognized that this is a legitimate governmental purpose, *see Wilson,* 148 F.3d at 604 (quoting *Hampton,* 106 F.3d at 1287) ("'Deterring frivolous prisoner filings in the federal courts falls within the realm of Congress's legitimate interests.'"), and plaintiff does not dispute this point.

Having examined the text of the statute and the underlying legislative history. I can envision only one other purpose for the attorney fee limitation, namely, to protect the public fisc from large attorney fee awards in prisoner civil rights lawsuits. This, too, is a legitimate governmental purpose. *See Shapiro v. Thompson,* 394 U.S. 618, 633, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

### D. *Rational Relationship Between Interests and Distinction*

Having identified two interests conceivably underlying § 1997e(d)(2) and determined that these interests are legitimate, my next task is to determine whether the distinction between prisoners and non-prisoners embodied in § 1997e(d)(2) is rationally related to the achievement of these interests. Importantly, I again emphasize that the question here is not only whether the limitation on attorney fees in general serves these interests; it is also whether the distinction drawn between prisoners and non-prisoners is rationally related to these governmental interests. *See Mosley,* 408 U.S. at 95, 92 S.Ct. 2286. After extensively considering the law in this area. I conclude that there is no rational relationship between the distinction drawn by § 1997e(d)(2) and the purported governmental interests.

### 1. *Deterring Frivolous Filings*

 The first conceivable governmental interest underlying § 1997e(d)(2) is the interest which underlies the PLRA in general: deterrence of frivolous filings by prisoners. Any relationship between an award of attorney fees to successful prisoner plaintiffs and the initial filing of frivolous civil rights suits is, at best, so attenuated as to be irrational. *See City of Cleburne,* 473 U.S. at 446, 105 S.Ct. 3249. Nearly every prisoner civil rights suit is filed by a prisoner proceeding *pro se.* As in this case, it is generally only after the case has been filed and has survived both an initial screening for frivolousness, *see* 28 U.S.C. § 1915A, and a summary judgment motion, making it clear that the case will proceed to trial, that a court will assist the prisoner in obtaining counsel.

The Supreme Court's decision in *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972), is persuasive. In *Lindsey,* the Court struck down, under rational basis review, an Oregon statute which required a defendant in an action brought under the state's forcible entry and wrongful detainer statute (FED statute) who wished to appeal to file a double-bond. The Court found that this provision, by imposing a requirement not imposed on other civil litigants wishing to appeal, "imposes additional requirements that ... bear no reasonable relationship to any valid state objective and that arbitrarily discriminates against tenants appealing from adverse decisions in FED actions." *Id.* at 76, 92 S.Ct. 862. Specifically, as relevant here, the Court rejected the state's argument that the double-bond requirement reduced frivolous appeals. The Court reasoned: "The claim that the double-bond requirement operates to screen out frivolous appeals is unpersuasive, for it not only bars nonfrivolous appeals by those who are unable to post the bond but allows meritless appeals by others who can afford the bond." *Id.* at 78, 92 S.Ct. 862; *see also, Rinaldi v. Yeager,* 384 U.S. 305, 310, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966) (law requiring those sentenced to prison to reimburse the state for the cost of transcript used in appeal, but not requiring such reimbursement by persons sentenced to probation or a fine, violated equal protection; there was no rational relationship

between distinction drawn by statute and deterrence of frivolous appeals).

For similar reasons, the fee cap contained in § 1997e(d)(2) is not rationally related to the purported goal of reducing frivolous § 1983 filings. Indeed, the connection is even more tenuous here than in *Lindsey* because, unlike the statute in *Lindsey* which brought at least some frivolous appeals within its sweep, by its terms attorney fees under § 1988 are available only to successful plaintiffs, and therefore § 1997e(d)(2) targets only successful claims. Thus, if anything, § 1997e(d)(2) bears an even more tenuous relationship to the goal of deterring frivolous filings than the double-bond requirement in *Lindsey,* and under the reasoning of *Lindsey* I must find that the fee cap fails to satisfy rational basis review, at least insofar as the purported interest in deterring frivolous filings is concerned.

In short, looking to "the realities of the subject addressed by the legislation," *Heller,* 509 U.S. at 318–19, 113 S.Ct. 2637, it simply cannot be contended that the attorney fee cap has any bearing on the filing of frivolous cases. The cases subject to the cap are invariably filed by prisoners themselves without the assistance of an attorney; it is untenable to suppose that a prisoner would be deterred from filing a frivolous lawsuit simply because, if he manages to make it that far, he may have a more difficult time obtaining counsel willing to take his case to trial. If anything, this is the only purpose which is served by the cap: limiting the number of attorneys willing to represent prisoners because of the reduced financial incentives for doing so. Accordingly, I conclude that § 1997e(d)(2) is not rationally related to the goal of deterring frivolous lawsuits brought under § 1983.[5]

### 2. *Protecting the Public Fisc*

▮▮▮▮ It may be that § 1997e(d)(2) also serves the legitimate governmental interest of protecting the public fisc. By its terms, § 1983 authorizes suits only against persons acting under color of state law. Except in the relatively rare situations in which private persons are deemed state actors, this means that damages in § 1983 actions and attorney fees awarded under § 1988 will be assessed against pub-

---

**5.** There is no court opinion of any precedential weight addressing the constitutionality, on equal protection grounds, of § 1997e(d)(2). An exhaustive search of the Westlaw database revealed only three cases addressing the issue whatsoever. The first is an unpublished district court decision, *Collins v. Algarin,* No. 95–4220, 1998 WL 10234, at *9 (E.D.Pa. Jan.9, 1998), which upheld the provision. In the second case addressing this issue, the Third Circuit, sitting *en banc,* affirmed this decision by an equally divided court. *See Collins v. Montgomery County Bd. of Prison Inspectors,* 176 F.3d 679, 686 (3d Cir.1999) (en banc). Under the Third Circuit's law, this decision is entitled to no weight. *See Tunis Bros. Co., Inc. v. Ford Motor Co.,* 763 F.2d 1482, 1501 (3d Cir.1985), *vacated on other grounds,* 475 U.S. 1105, 106 S.Ct. 1509, 89 L.Ed.2d 909 (1986). Further, much of the district court's decision in *Collins* is dicta, as Judge Shapiro noted that the total amount which the court would award "may not be substantially less than the amount awarded by the court prior to enactment of the restrictions imposed by the PLRA." *Collins,* 1998 WL 10234, at *10. Finally, the Ninth Circuit reached the same conclusion in

*Madrid v. Gomez,* 150 F.3d 1030, 1041–42 (9th Cir.1998), although that opinion was subsequently withdrawn. *See* 179 F.3d 1252, 1999 WL 454882 (9th Cir. July 7, 1999). Although both the district court in *Collins* and the Ninth Circuit in *Madrid* concluded that § 1997e(d)(2) is rationally related to the goal of deterring frivolous filings, I find those decisions unpersuasive, even if they possessed some precedential weight. The courts in these cases reached this result in a conclusory fashion, failing to explain how the attorney fee provision is in any manner related to the filing of frivolous cases. As explained above, I conclude that there is no such relationship, and thus disagree with the conclusion reached by these courts.

The numerous cases rejecting equal protection challenges to the filing fee provisions of the PLRA are inapposite. There is a rational relationship between the obligation to pay a filing fee and a prisoner's decision to file a frivolous case. The filing fee obligation obviously creates a financial disincentive which requires a prisoner to "think twice" before filing a frivolous claim. *See Hampton,* 106 F.3d at 1286. As discussed above, the attorney fee provision creates no such disincentive.

lic officials and, by extension, the public treasury of the states.[6] While this is a legitimate purpose, however, the distinction between prisoners and nonprisoners drawn by § 1997e(d)(2) is not rationally related to achieving this purpose. As both the Supreme Court and the lowers courts have repeatedly observed, in cases ranging from rational basis review to strict scrutiny: "The protection of the public purse is a valid, indeed necessary, purpose relevant to all public programs. But it may not be accomplished by arbitrarily singling out a particular class of persons to bear the entire burden of achieving that end." *Westberry v. Fisher*, 297 F.Supp. 1109, 1115 (D.Me.1969) (applying rational basis review) (also citing cases for proposition that "the courts have repeatedly stated that conservation of the public funds does not permit disparate treatment of persons similarly situated."); *see also, Plyler v. Doe*, 457 U.S. 202, 227, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) (intermediate scrutiny); *Shapiro v. Thompson*, 394 U.S. 618, 633, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (strict scrutiny); *Rinaldi*, 384 U.S. at 309, 86 S.Ct. 1497 (rational basis); *Silbowitz v. Secretary of Health, Educ. & Welfare*, 397 F.Supp. 862, 867 (S.D.Fla.1975), *summarily aff'd. sub nom. Califano v. Silbowitz*, 430 U.S. 924, 97 S.Ct. 1539, 51 L.Ed.2d 768 (1977) (rational basis).[7]

The Supreme Court's decision in *Rinaldi, supra*, is on point. In that case, the Court considered the constitutionality of a New Jersey statute which required criminal defendants sentenced to a prison term to reimburse the county for the cost of any transcript provided for use in their appeals. The statute did not apply, however, to those defendants who were sentenced to probation or a fine, but not a prison term. *See Rinaldi*, 384 U.S. at 307, 86 S.Ct. 1497. Applying rational basis review, the Court concluded that the distinction drawn between defendants sentenced to prison and those sentenced to a fine was not related to the underlying purpose of the statute, *i.e.*, reimbursing the state for appeal expenses incurred by unsuccessful appellants. The Court reasoned:

> We may assume that a legislature could validly provide for replenishing a county treasury from the pockets of those who have directly benefitted from county expenditures. To fasten a financial burden only upon those unsuccessful appellants who are confined in state institutions, however, is to make an invidious discrimination. Those appellants who have been sentenced only to pay a fine have been accorded the same benefit by the county—a transcript used in an unsuccessful appeal, and all that distinguishes them from their institutionalized counterparts is the nature of the penalty attached to the offense committed. There is no defensible interest served by focusing on that distinction as a classifying feature in a reimbursement statute, since it bears no relationship whatever to the purpose of the repayment provision. Likewise, an appellant subject only to a suspended sentence or probation is likely to differ from an inmate only in the extent of his criminal record. That, too, is a trait unrelated to the fiscal objective of the statute.

*Rinaldi*, 384 U.S. at 309–10, 86 S.Ct. 1497. Similarly, here "[t]here is no defensible

---

**6.** However, neither the state, nor a state agency, nor a state official sued in his or official capacity, is a person as that term is used in § 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64–71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Thus, there will be no direct levy by a federal court on the state treasury, *i.e.*, no order that the *state* (as a *defendant* in the case) pay an attorney fee to the prevailing party. The state may have an agreement with its employees to afford them representation and to pay any judgment, including a § 1988 attorney fee award, that may be entered in the event the case is lost.

**7.** Although *Silbowitz*, as a summary affirmance, does not have the same precedential weight as a full opinion by the Supreme Court, it is entitled to some weight. *See Allen v. Wright*, 468 U.S. 737, 779, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *Southern Ry. Co. v. Seaboard Allied Milling Corp.*, 442 U.S. 444, 462, 99 S.Ct. 2388, 60 L.Ed.2d 1017 (1979).

interest served by focusing on th[e] distinction" between prisoners and nonprisoners, "since it bears no relationship whatever to the purpose of" either the attorney fee provision of § 1988 or the cap on such fees provided by § 1997e(d)(2). The only manner in which the distinction between prisoners and nonprisoners relates to the goal of protecting the public fisc is by making prisoners (or the *pro bono* attorney) bear the entire extent of that burden for no other reason than the fact that they are prisoners (or attorneys who have undertaken to represent prisoners). Such an arbitrary discrimination, as the cases discussed above demonstrate, is not a permissible means of guarding the state's purse. Accordingly, I conclude that there is no rational relationship between the distinction made by § 1997e(d)(2) and the purported goal of protecting the public fisc.

▬ Congress may have felt displeasure at the refusal of the Supreme Court to incorporate a proportionality factor into the calculus used to determine a § 1988 attorney fee award. *See City of Riverside v. Rivera,* 477 U.S. 561, 574–81, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). I do not question the authority of Congress to amend § 1988 to limit the amount of attorney fees available in all civil rights cases. Section 1988 itself is a benefit conferred upon civil rights litigants by Congress to encourage the private enforcement of civil rights by means of lawsuits. As a general principle. "[w]hat Congress giveth, ... it can also taketh away." *Burks v. American River Transp. Co.,* 679 F.2d 69, 76 (5th Cir. Unit A 1982); *accord Westvaco Corp. v. United States,* 225 Ct.Cl. 436, 639 F.2d 700, 709 (Ct.Cl.1980); *In re Savage,* 67 B.R. 700, 708 (D.R.I.1986). Congress may do so, however, only "so long ·as it does not act irrationally." *Savage,* 67 B.R. at 708. As the Supreme Court's equal protection cases in the area make clear, when Congress arbitrarily saddles one group with the burden of protecting the public fisc, it acts irrationally.

**E. Conclusion**

▬ Although § 1997e(d)(2) does not burden ·a fundamental right, it does erect ·a hurdle for prisoners but not for other civil rights litigants: it will be more difficult for prisoners to obtain counsel willing to pursue civil rights claims, given the limited fees available to such attorneys even if they prevail. And, by the plain language of both § 1988 and § 1997e(d)(2), this disadvantage applies only to prisoners who have meritorious claims. In this respect, the reasoning of the Massachusetts Supreme Court is particularly poignant:

> It is an essential element of equal protection of the laws that each person shall possess the unhampered right to assert in the courts his rights, without discrimination, by the same processes against those who wrong him as are open to every other person. The courts must be open to all upon the same terms. No obstacles can be thrown in the way of some which are not interposed in the path of others. Recourse to the law by all alike without partiality or favor, for the vindication of rights and the redress of wrongs, is essentially to equality before the law.

*Bogni v. Perotti,* 224 Mass. 152, 112 N.E. 853, 856 (1916); *cf. Procunier v. Martinez,* 416 U.S. 396, 419, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) ("Regulations and practices that unjustifiably obstruct the availability of professional representation ... are invalid.").

Because the provision of § 1997e(d)(2) limiting an attorney fee award under 42 U.S.C. § 1983 to 150% of the judgment awarded in prisoner cases is not rationally related to any legitimate governmental interest, I conclude that the provision violates the equal protection component of the Fifth Amendment. Accordingly, plaintiff's entitlement to attorney fees will be determined without reference to that provision.[8]

---

**8.** The hourly rate for counsel appointed under 18 U.S.C. § 3006A in this District is $75.00 (for both in-court and out-of-court work). This

leads to a PLRA ceiling, under § 1997e(d)(3) of $112.50 ($75.00 times 150%), which is

## V. Order

Defendants did not argue in their response that plaintiff is not· a prevailing party, nor did they attack the reasonableness of the hours and rate claimed by counsel for plaintiff in his detailed billing summary. Presumably, defendants viewed these issues as essentially irrelevant in light of the fee cap provision of § 1997e(d)(2). Fairness dictates that defendants have the opportunity to respond to the fees claimed by plaintiff under the ordinary lodestar standards. governing § 1988 fee claims generally. Accordingly, it is hereby ORDERED that defendants may file a response addressing this issue within 14 days of the date of this Order.

IT IS SO ORDERED.

## *OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION AND ALLOWING DEFENDANTS ADDITIONAL TIME TO FILE A SUPPLEMENTAL RESPONSE*

### I. Introduction

■ This case has been the subject of numerous orders of the Court, and thus the facts need only be briefly restated here. Plaintiff William Walker, a state prisoner, commenced this action against defendants Thomas Bain and Janice Richter (also referred to as Janice Metzger), corrections officers, alleging that defendants retaliated against him for filing grievances and lawsuits. The case was tried to a jury before the undersigned pursuant to 28 U.S.C. § 636(c). On April 23, 1999, the Court entered an amended judgment in favor of plaintiff and against

defendants jointly and severally in the amount of $1.00; in favor of plaintiff and against defendant Bain in the amount of $300.00; and in favor of plaintiff and against defendant Richter in the amount of $125.00. On May 7, 1999, plaintiff filed his motion for attorney fees pursuant to 42 U.S.C. § 1988 and FED.R.CIV.P. 54(d). Plaintiff seeks $36,046.25 in fees. Defendants filed a response on June 9, 1999, arguing that, pursuant to section 803 of the Prison Litigation Reform Act (PLRA), plaintiff is entitled to a fee of only $629.00. Plaintiff filed a reply brief on July 16, 1999, arguing that the PLRA's attorney fee cap is unconstitutional both on vagueness and equal protection grounds.

On August 3, 1999, I filed an Opinion concluding that the PLRA fee cap codified at 42 U.S.C. § 1997e(d)(2) (limiting an award of fees to 150% of the monetary judgment) violates the equal protection component of the Fifth Amendment Due Process Clause. I therefore ordered defendants to file a supplemental brief addressing the amount of fees to which plaintiff is entitled under the pre-PLRA standard. On August 20, 1999, defendants filed this motion for reconsideration pursuant to Local Rule 7.1(h). For the reasons that follow, defendants' motion will be denied.

### II. Standard of Review

Although the Federal Rules of Civil Procedure do not provide for reconsideration of an order of the Court, the Local Rules of this Court provide that such a motion may be filed within 10 days after entry of the judgment or order which is the subject of the motion. *See* E.D.Mich. LR 7.1(g)(1).[1] Although a motion for reconsid-

---

greater than the rate claimed by plaintiff's counsel ($110.50 per hour).· Because the rate claimed by counsel is less than the PLRA ceiling, the Court has no occasion to consider the constitutionality of this provision, and the Court's holding is limited to the cap imposed by § 1997e(d)(2). This restraint is appropriate in light of the long line of Supreme Court cases noting that constitutional questions should be avoided unless absolutely necessary to a resolution of the case. *See, e.g., Rescue Army v. Municipal Court,* 331 U.S. 549, 568–574, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947);

*United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960); *New York v. Ferber,* 458 U.S. 747, 767–68, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982); *Ellis v. Brotherhood of Railway, Airline & Steamship Clerks,* 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984).

1. Defendants also label their motion as one to alter or amend the judgment under Rule 59(e) and, alternatively, for relief from judgment under Rule 60. However, "Rules 59(e) and 60(b) . . . are not applicable here because they

eration is committed to the Court's discretion, as a general matter "the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by implication." E.D.Mich. LR 7.1(g)(3). Rather, to be entitled to relief the movant must demonstrate both (1) "a palpable defect by which the court and the parties have been misled" and (2) "that correcting the defect will result in a different disposition of the case." *Id.*

Notwithstanding this generally strict standard, I will give *de novo* consideration to the arguments raised by defendants because they did not have the opportunity to address the equal protection issue prior to my Order of August 3. Plaintiff first raised the argument in his reply brief, after the defendants had invoked § 1997e(d)(2) as a basis for limiting the amount of fees. Accordingly, it is appropriate to give full consideration to defendants' arguments, rather than viewing them under the more narrow "palpable defect" standard. Nevertheless, I find defendants' arguments unpersuasive.[2]

### III. Analysis

In my previous Order, I concluded that the distinction drawn between prisoners and nonprisoners by the PLRA fee cap at issue here is not rationally related to any legitimate governmental interest, and thus does not survive rational basis review. In reaching this conclusion, I identified two

possible legitimate governmental interests served by the provision: deterrence of frivolous filings and protection of the public fisc.[3] Relying on *Lindsey v. Normet,* 405 U.S. 56, 76–78, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972) and *Rinaldi v. Yeager,* 384 U.S. 305, 310, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966), I found that the statute is not rationally related to the first purpose because (a) it will have no effect on the initial filing of frivolous lawsuits, and (b) by its terms it applies only to meritorious claims. Similarly, I concluded that the distinction drawn between prisoners and nonprisoners by the fee cap provision is not rationally related to the goal of protecting the public fisc because Congress cannot arbitrarily single out a particular class of persons to bear the entire burden of achieving that end, again relying principally on *Rinaldi,* 384 U.S. at 309–10, 86 S.Ct. 1497. Accordingly, I concluded that the fee cap contained in § 1997e(d)(2) does not survive rational basis review, and thus violates the right of prisoners to the equal protection of the laws.

Defendants raise three arguments against this conclusion. First, defendants argue that the attorney fee limitation reflects Congress's reasonable judgment, based on twenty years of experience with the civil rights attorney fee provision, that the underlying purpose of the fee provision—encouraging civil rights suits which benefit the public—is not served by award-

apply only to final judgments and orders." *New York v. Almy Bros., Inc.,* No. 90–CV–818, 1998 WL 185541, at *1 n. 1 (N.D.N.Y. Apr.15, 1998); *see also, Mallory v. Eyrich,* 922 F.2d 1273, 1277 (6th Cir.1991) ("Rule 60(b) applies only to final judgments."); *WSM, Inc. v. Wheeler Media Servs., Inc.,* 810 F.2d 113, 115 n. 2 (6th Cir.1987) ("Rule 59(e) concerns only final judgments."). Under Rule 54, " 'judgment' encompasses final judgments and appealable interlocutory orders." *Balla v. Idaho State Bd. of Corrections,* 869 F.2d 461, 466 (9th Cir.1989) (discussing Fed.R.Civ.P. 54(a)). My previous order was neither a final judgment nor an appealable interlocutory order, as it did not conclusively establish plaintiff's entitlement to any amount of fees, nor did it award any. Accordingly, Rules 59 and 60 are inapplicable here.

2. Pursuant to Local Rule 7.1(h)(2), I conclude that neither oral argument nor a response by plaintiff is necessary to resolve defendants' motion.

3. I also identified one other possible purpose, namely to deprive prisoners *qua* prisoners of the opportunity to obtain an award of attorney fees on the same basis as other civil rights litigants. However, I concluded that this purpose, if it exists, cannot support the constitutionality of the fee cap because a " 'bare congressional desire to harm a politically unpopular group' " is not a legitimate governmental interest. *Weinberger v. Salfi,* 422 U.S. 749, 772, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (quoting *United States Dept. of Agriculture v. Moreno,* 413 U.S. 528, 534, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973)).

ing large fees in prisoner cases. Second, defendants argue that the PLRA fee cap is a reasonable attempt by Congress to make attorney fee awards in prisoner cases proportional to the relief obtained. These first two arguments are essentially arguments that the fee cap provision is rationally related to legitimate governmental ends. Third, defendants argue that prisoners are not similarly situated as other civil rights litigants for purposes of the equal protection analysis.

Without rehashing entirely the analysis in my original Opinion, I conclude that these arguments are without merit. The argument that the fee cap is rationally related to the goal of deterring frivolous filings is untenable in light of the Supreme Court's rejection of similar claims in *Lindsey* and *Rinaldi*. Similarly, although protecting the public fisc is, as defendants argue, a legitimate public purpose, the Supreme Court's cases (again *Rinaldi* in particular) make clear that Congress cannot, consistent with equal protection, require a politically unpopular group—*i.e.,* prisoners—to bear the entire burden of that cost.

■■■ Defendants' argument essentially boils down to an assertion that the distinction between prisoner and nonprisoner civil rights litigants is permissible because the two groups are not similarly situated. Noting that the purpose of § 1988 is to promote the enforcement of civil rights for the benefit of the public, defendants argue that "[t]he attorney fees limits embodied in the PLRA clearly are a congressional reaction to 20 years of prisoner litigation which has overburdened the courts, and drained public treasuries often with little benefit to the prisoner and little or no benefit to the public." Def.s' Br. in Supp. of Mot. to Reconsider, at 4. Defendants also argue that prisoners and nonprisoners are not similarly situated because "few citizens who are not incarcerated avail themselves of the resources of the federal court to pursue claims warranting little or no damages, while prisoners bring a disproportionate number of these cases." *Id.* at 7. Further, defendants argue, "inmates utilize the courts more frequently and for more meritless and petty complaints than do other citizens" because "they have ample time to pursue frivolous and relatively petty grievances, they can enjoy the attention they receive from the court through sending and receiving mail, and they can look forward to a field trip away from the confines of prison to attend court sessions." *Id.*

Defendants' argument fails for two reasons. First, it relies primarily on the assertion that prisoners clog up the courts with frivolous litigation to a much greater extent than do nonprisoner civil rights litigants. While this may be true, it is also irrelevant. As explained briefly above and more fully in my initial Opinion, the attorney fee cap simply does not relate in any way to the initial filing of a civil rights lawsuit. Defendants' argument is simply their rational relationship argument in a different guise.

■■■ More fundamentally, defendants' argument fails because their "similarly situated" argument is based on too broad a comparison of prisoners and nonprisoners. It is true, as defendants note, that the equal protection component of the Fifth Amendment does not require that all persons be treated alike; rather, it requires only that all persons "similarly situated" to each other be treated alike. *See City of Cleburne, Tex. v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). It is not necessary, however, that the two classes created by a statute be similarly situated in all respects. *See Samad v. Horn,* 913 F.Supp. 373, 376 (E.D.Pa.1995) ("The defendants mistakenly interpret 'similarly situated' as 'identically situated.' "). Rather, "[t]he similarly situated inquiry focuses on whether the [person challenging the governmental action is] similarly situated to another group *for purposes of the challenged government action."* *Klinger v. Department of Corrections,* 31 F.3d 727, 731 (8th Cir.1994) (emphasis added); *accord Reynolds v. Sims,* 377 U.S. 533, 565,

84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) (equal protection requires "uniform treatment of persons standing in the same relation to the governmental action questioned or challenged."); State of *Ohio ex rel Lloyd v. Dollison*, 194 U.S. 445, 447, 24 S.Ct. 703, 48 L.Ed. 1062 (1904) (same). "Thus, ... the similarly situated inquiry depends on what government action the plaintiffs are challenging." *Klinger*, 31 F.3d at 731. As another court has eloquently explained:

> The test is whether a prudent person, looking objectively at the [governmental actions], would think them roughly equivalent and the protagonists similarly situated. Much as in the lawyer's art of distinguishing cases, the "relevant aspects" are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.

*Economic Opportunity Comm'n of Nassau County, Inc. v. County of Nassau*, 47 F.Supp.2d 353, 370 (E.D.N.Y.1999) (quoting *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir.1989)); *see also, Betts v. McCaughtry*, 827 F.Supp. 1400, 1405 (W.D.Wis.1993) ("To be 'similarly situated,' groups need not be identical in makeup, they need only share commonalities that merit similar treatment.").

Here, therefore, the question is not whether prisoners and nonprisoners are similarly situated in general, or even, as defendants pose the issue, whether prisoner and nonprisoner civil rights litigants are similar.[4] Rather, the issue is whether *successful* prisoner civil rights litigants are similarly situated with successful nonprisoner civil rights litigants. Phrased in this manner, it is clear that the prisoners and

nonprisoners are similarly situated: a prisoner's increased incentive or ability to file a frivolous lawsuit does not, as has been explained, relate in any way to either § 1988 or § 1997e(d)(2). Indeed, I can conceive of no distinction between these two classes for purposes of their entitlement to attorney fees under § 1988 (other than a desire to accord less favorable treatment to prisoners, which is impermissible), and defendants have offered none. Put another way, the disincentives of the fee cap provision do not inhibit the filing of frivolous lawsuits by prisoners; they *do* inhibit the willingness of lawyers to undertake the representation of plaintiffs who file non-frivolous cases. Accordingly, I reject defendants' argument that prisoners and non-prisoners are not similarly situated for purposes of plaintiff's equal protection challenge to § 1997e(d)(2).

As the Supreme Court recently explained (in a case striking down a statute under rational basis review):

> Central both to the idea of the rule of law and to our own Constitution's guarantee of equal protection is the principle that government and each of its parts remain open on impartial terms to all who seek its assistance. Equal protection of the laws is not achieved through indiscriminate imposition of inequalities. Respect for this principle explains why laws singling out a certain class of citizens for disfavored legal status or general hardships are rare. A law declaring that in general it shall be more difficult for one group of citizens than for others to seek aid from the government is itself a denial of equal protection of the laws in the most literal sense.

*Romer v. Evans*, 517 U.S. 620, 633, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) (inter-

---

**4.** For example, prisoners and nonprisoners are not similarly situated for purposes of the filing fee provisions of the PLRA because, as defendants suggest, prisoners have more time and incentives to file civil rights suits than nonprisoners. *See Murray v. Dosal*, 150 F.3d 814, 818 (8th Cir.1998). This does not, however, require a finding that prisoners and

nonprisoners are not similarly situated for all purposes. As explained above, the "similarly situated" inquiry focuses on the relationship between the classes in light of the particular governmental action being challenged. Here, the incentives and ability to file numerous frivolous cases does not relate to the issue of attorney fees for successful litigants.

nal quotations and citations omitted). Here, Congress has singled out successful prisoner civil rights litigants and treated them differently from all other successful civil rights litigants, imposing special burdens on prisoners solely because they are prisoners. Because this distinction bears no rational relationship to any legitimate governmental interest, § 1997e(d)(2) violates plaintiff's right to the equal protection of the laws guaranteed by the Fifth Amendment.

### IV. Order

Accordingly, it is ORDERED that defendants' motion for reconsideration is hereby DENIED. It is further ORDERED that defendants may file a supplemental response to plaintiff's motion for attorney fees addressing the amount of fees to which plaintiff is entitled under § 1988 notwithstanding the cap contained in § 1997e(d)(2) within 14 days of the date of this Order.

IT IS SO ORDERED.