**W.C. MCLINDON, Plaintiff,**

v.

**Harry K. RUSSELL, et al., Defendants.**

**No. 1:95CV00676.**

United States District Court,
S.D. Ohio,
Western Division.

Dec. 16, 1999.

Alphonse Adam Gerhardstein, Laufman & Gerhardstein, Cincinnati, OH, Lynn D. Pundzak, Cincinnati, OH, for Plaintiff.

W.C. McLindon, Lebanon, OH, pro se.

Carol Anne Hamilton O'Brien, Ohio Attorney General, Corrections Litigation, Janet R. Hill Arbogast, Ohio Attorney General, Corrections Litigation, Columbus, OH, for Ohio Dept. of Rehab., Ohio Department of Rehabilitation and Correction, Harry Russell, G. Wyatt, Capt, Hoilette, Lt., Greg Gainey, James E. Guard, defendants.

## ORDER

SHERMAN, United States Magistrate Judge.

This matter is before the Court on plaintiff's motion for award of attorney's fees and costs (Doc. 53), defendant Guard's objection thereto (Doc. 55), plaintiff's reply in support of the motion (Doc. 57), defendant's supplemental authorities and objection (Docs.58, 60), and plaintiff's supplemental memoranda. (Docs.61, 62).

Plaintiff initially brought this action pro se pursuant to 42 U.S.C. § 1983 against Lebanon Correctional Institution (LeCI) defendants James Guard, Greg Gainey, Warden Harry Russell, Captain Wyatt, and Lt. Hoilette alleging a violation of his constitutional rights. Plaintiff alleged that defendant Guard assaulted him while defendants Gainey, Russell, Wyatt, and Hoilette failed to protect him from this assault. Summary judgment was granted against plaintiff on his Eighth Amendment failure to protect claim against defendants Russell, Wyatt, and Hoilette. (Doc. 17). Summary judgment was also granted against plaintiff on his equal protection, due process, and state law claims. *Id.* However, summary judgment against plaintiff was denied as to his use of excessive force claim against defendant Guard and his failure to protect claim against defendant Gainey. *Id.* Thereafter, Lynn D. Pundzak was appointed counsel for plaintiff. (Doc. 18).

Defendants Guard and Gainey moved for summary judgment, which motion was denied by Order of December 8, 1998. (Doc.36). On February 18, 1999, after a three day jury trial, a verdict was returned for defendant Gainey on plaintiff's Eighth Amendment deliberate indifference claim. The jury returned a verdict for plaintiff against defendant Guard on plaintiff's Eighth Amendment excessive force claim. A judgment was entered against defendant

Guard in the amount of $1.00 nominal damages and $200.00 punitive damages. (Docs.50, 51, 52). Plaintiff now moves for an award of $14,616.00 in attorney's fees and $870.28 in costs against defendant Guard as a prevailing party in this case pursuant to 42 U.S.C. § 1988. (Doc. 53). Plaintiff also moves for leave to file a supplemental petition for hours spent in preparing and arguing the fee application. *Id.*

Section 1988 provides, inter alia, that "[i]n any action or proceeding to enforce [various specified civil rights provisions], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorneys' fee as part of the costs." 42 U.S.C. § 1988(b). Defendant Guard does not contest the fact that, pending appeal, plaintiff is a prevailing party for purposes of 42 U.S.C. § 1988. In view of the above, the Court finds that plaintiff is a prevailing party within the meaning of § 1988. *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Northcross v. Bd. of Ed. of Memphis City Schools,* 611 F.2d 624, 633 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980).

Defendant does not challenge the reasonableness of plaintiff's request in terms of the hours or the hourly rate. Rather, defendant argues that plaintiff failed to achieve a sufficient degree of success to justify an award of fees under *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), and that plaintiff's motion seeks relief barred by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(d). If the Court determines that plaintiff's degree of success is de minimis and does not justify an award of attorney's fees, defendant's argument that an award of fees is barred by the PLRA is moot. The Court shall address each argument in turn.

## I. An Award of Attorney's Fees is not Barred by *Farrar v. Hobby.*

■ As a prevailing party, plaintiff is entitled to recover a "reasonable" attor-ney's fee. *Northcross,* 611 F.2d at 636. The reasonableness of the fee bears a direct relationship to the degree of success obtained. *Hensley,* 461 U.S. at 438, 103 S.Ct. 1933. In determining what is a reasonable fee, "the most critical factor is the degree of success obtained." *Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). *See also Cramblit v. Fikse,* 33 F.3d 633, 635 (6th Cir.1994). Defendant argues that the limited degree of success achieved by plaintiff in this case is not sufficient to justify an award of attorney's fees under *Farrar.*

■ In *Farrar,* the Supreme Court upheld the denial of attorney's fees in a case where the plaintiff sought $17 million in compensatory damages, but received only a one dollar nominal judgment. The Supreme Court stated that courts must "give primary consideration to the amount of damages awarded as compared to the amount sought." 506 U.S. at 114, 113 S.Ct. 566, quoting *Riverside v. Rivera,* 477 U.S. 561, 585, 106 S.Ct. 2686, 91 L.Ed.2d 466(1986)(Powell, J., concurring). Citing the "technical" nature of the victory, the high court stated, "When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." 506 U.S. at 115, 113 S.Ct. 566, internal citations omitted. The Court noted that plaintiff received only nominal damages in a litigation that "accomplished little beyond giving petitioners 'the moral satisfaction of knowing that a federal court concluded that [their] rights had been violated' in some unspecified way." *Id.* at 114, 113 S.Ct. 566, quoting *Hewitt v. Helms,* 482 U.S. 755, 762, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987). Courts must consider "the relationship between the extent of success and the amount of the fee award." *Id.* at 116, 107 S.Ct. 2672, quoting *Hensley,* 461 U.S. at 438, 103 S.Ct. 1933. In her concurring opinion in *Farrar,* Justice O'Connor

set forth three oft-cited factors for determining the degree of success: (1) the extent of relief; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public purpose served. *Farrar*, 506 U.S. at 122, 113 S.Ct. 566 (O'Connor, J., concurring). Lower courts have followed this three step analysis in considering attorney's fees claims. *See, e.g., Phelps v. Hamilton*, 120 F.3d 1126, 1132 (10th Cir.1997); *Jones v. Lockhart*, 29 F.3d 422, 424 (8th Cir.1994); *Cartwright v. Stamper*, 7 F.3d 106, 110 (7th Cir.1993). Both parties agree that these three factors control. (Doc. 55 at 6; Doc. 57 at 4).

### A. Difference Between Recovery and Relief Sought

■ Defendant cites the disparity between the amount of damages sought in plaintiff's pro se complaint, $400,000, and the amount he was actually awarded in this case, $201.00. At first blush, the $1.00 in nominal and $200.00 in punitive damages appears disproportionate to the damages initially sought by plaintiff for the violation of his rights. (Doc. 2, Complaint). However, once counsel was appointed to represent plaintiff, it became clear that his primary objective in the underlying § 1983 action was not to obtain monetary damages, but rather to vindicate his Eighth Amendment right to be free from cruel and unusual punishment and to deter misconduct of prison guards in the future. Excerpts from counsel's closing argument bear this out:

> [W]hat in the world would compensate somebody for getting the heck beat out of them? I don't know. And I'm really not even going to suggest a number to you, because that's something that I think is within your province. But I will tell you this: Mr. McLindon doesn't care if you give him one dollar or a hundred dollars. He wants you, with your verdict, to send a message to the guards at the Lebanon Correctional Facility and, in a broader sense, to all of the prison guards who work in the Ohio system.

> He wants you to tell these people by your verdict: The Constitution of the United States means something in Ohio and we're going to make sure that those provisions of the Constitution are upheld.... So, whether you award Mr. McLindon one dollar or a hundred dollars, doesn't matter. What matters is that you tell people like Officer Guard and Officer Gainey and every other C.O. that they cannot beat up, use excessive force against inmates, that those inmates have certain minimal rights when they're in that institution, and that we're not going to allow those minimal rights to be violated.

(Doc. 56 at 2–3). Clearly, the jury did just that when they found defendant Guard used excessive force against plaintiff in violation of his Eighth Amendment rights and awarded plaintiff $200.00 in punitive damages. Viewed in this light, the difference between the amount recovered, $201.00, and damages sought was not dramatic. *See, e.g., Jones*, (recovery of $2 in damages of $860,000 sought paled in comparison to discrepancy of $1 recovered of $17,000,000 sought in *Farrar*). Moreover, the plaintiff in *Farrar* achieved only nominal damages, evidencing merely a "technical" victory. Here, plaintiff received not only nominal, but punitive damages as well. The clear import of the punitive damages award was to send a message to corrections officers and deter future misconduct, and distinguishes this case from *Farrar*. In terms of the extent of relief obtained, the verdict in plaintiff's favor vindicated plaintiff's constitutional rights and was not de minimus.

### B. Significance of Legal Issue

The vindication of plaintiff's "right to be free from cruel and unusual punishment is a significant legal issue in contrast to the injury to a business interest alleged in *Farrar*." *Jones v. Lockhart*, 29 F.3d 422, 424 (8th Cir.1994). As explained above, despite plaintiff's limited monetary recovery, his victory was not merely technical or de minimis. *Farrar*, 506 U.S. at 120, 113

S.Ct. 566. Rather, the jury's verdict reflects a clear finding that defendant Guard violated plaintiff's constitutional right to be free from the use of excessive force. Plaintiff prevailed on a significant substantive issue—the Eighth Amendment right to be free from cruel and unusual punishment. *See, e.g., O'Connor v. Huard,* 117 F.3d 12, 18 (1st Cir.1997)(vindication of pretrial detainee's right to be free from punishment without due process of law significant); *Jones v. Lockhart,* 29 F.3d 422, 424 (8th Cir.1994) (attorney's fees appropriate despite only nominal damages for successful Eighth Amendment claim where plaintiff recovered punitive damages and vindicated a significant right); *Cabrera v. Jakabovitz,* 24 F.3d 372, 393 (2d Cir.)(upholding award of attorney's fees against one of multiple defendants, despite $1 damage award and minimal equitable relief against defendant, where victory sent significant message to landlords who engage in racial steering), *cert. denied,* 513 U.S. 876, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994). *Cf., Farrar,* 506 U.S. at 574, 579, 113 S.Ct. 941 (plaintiff prevailed "in some unspecified way" on procedural due process claim against the "least culpable defendant"). Thus, plaintiff's success on his Eighth Amendment excessive force claim is a victory on a significant legal issue.

## C. Public Goal

The award of punitive damages is sufficient to indicate a degree of success necessary to support an award of attorney's fees. The public purpose factor relates to whether the victory vindicates important rights and deters future violations. *Farrar,* 506 U.S. at 122, 113 S.Ct. 566 (O'Connor, J., concurring). "An award of punitive damages ... is strong evidence that the victory served a public purpose." *Cartwright v. Stamper,* 7 F.3d 106, 110 (7th Cir.1993). Punitive damages serve two important public interests: deterring future misconduct by defendants and others like them, and punishing the defendants for their misconduct. *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 19–20,

111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). *See also Farrar,* 506 U.S. at 121–22, 113 S.Ct. 566 (O'Connor, J., concurring). In addition, a plaintiff bringing a civil rights action "does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority." *Jones,* 29 F.3d at 424 (8th Cir.1994), quoting *Casey v. City of Cabool,* 12 F.3d 799, 805 (8th Cir.1993), *cert. denied,* 513 U.S. 932, 115 S.Ct. 325, 130 L.Ed.2d 285 (1994). *See also Koopman v. Water Dist. No. 1 of Johnson County, Kansas,* 41 F.3d 1417 (10th Cir.1994)(despite being awarded only $1 in damages on successful due process claim, attorney's fees were warranted as plaintiff's victory had a significant impact on public employees, sent an important message and was not the result of protracted litigation), *cert. denied,* 516 U.S. 965, 116 S.Ct. 420, 133 L.Ed.2d 337 (1995).

Thus, in this case, the punitive damage award distinguishes plaintiff's victory from those which are classified as merely technical or de minimis, including those cited by defendant. (Doc. 55 at 10). *See Pino v. Locascio,* 101 F.3d 235, 238–39 (2d Cir. 1996)($21 million sought in compensatory and punitive damages, $1 nominal damages awarded, no punitive damages); *Romberg v. Nichols,* 48 F.3d 453, 455 (9th Cir.1995)(affirming denial of fees to plaintiffs who received only $2 in nominal damages and no punitive damages when asking for $2 million); *Maul v. Constan,* 23 F.3d 143 (7th Cir.1994)(no punitive damages awarded); *Briggs v. Marshall,* 881 F.Supp. 414, 418 (S.D.Ind.1995), *aff'd,* 93 F.3d 355 (7th Cir.1996)(same); *Haywood v. Koehler,* 885 F.Supp. 624, 629 (S.D.N.Y.1995)(same), *aff'd,* 78 F.3d 101 (2d Cir.1996); *Hamilton v. Lokuta,* 871 F.Supp. 314 (E.D.Mich.1994)(recognizing that award of punitive damages is "strong evidence of a public purpose," but finding plaintiff received no punitive damages). The jury effectively chose to send a message to prison employees when it awarded punitive damages. Plaintiff's victory serves the

public interest by providing a reminder to defendant Guard and to other corrections officers that they must maintain control over their tempers and refrain from the use of excessive force against inmates. Plaintiff's success in this case will serve to deter future violations of the civil rights of other inmates and serves the public interest.

The three factors outlined in *Farrar* weigh in favor of an award of attorney's fees in this case. Thus, the Court declines to invoke the *Farrar* "no fee at all" exception in this case.

## II. PLRA Issues

Defendant argues that plaintiff's motion for attorney's fees requests relief that is "barred" by Sections 803(d) of the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321–66, 42 U.S.C. § 1997e(d)(2), (3). (Doc. 55 at 2). In reality, the PLRA provisions cited by defendant would limit, but not altogether prohibit, the fees sought by plaintiff in this case. The PLRA's attorney's fees provisions are found at 42 U.S.C. § 1997e(d), which provides in relevant part:

(d) Attorney's Fees

(1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under [42 U.S.C. § 1988], such fees shall not be awarded, except to the extent that—
(A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under [42 U.S.C. § 1988]; and
(B)(i) the amount of the fee is proportionately related to the court ordered relief for the violation; or
(ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.
(2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.
(3) No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18, [ the Criminal Justice Act,] for payment of court-appointed counsel. . . .

On June 1, 1999, the Court stayed its decision on attorney's fees in this matter pending the Supreme Court's review of *Hadix v. Johnson,* 143 F.3d 246 (6th Cir. 1998), *cert. granted,* 525 U.S. 1000, 119 S.Ct. 508, 142 L.Ed.2d 422 (1998). (Doc. 59). The Sixth Circuit in *Hadix* held that the attorney's fees provision of the PLRA, 42 U.S.C. § 1997e(d), does not apply to cases pending on the effective date of the PLRA regardless of whether the work underlying the fee request was performed before or after the date of enactment of the PLRA. *Id.* at 256. On June 21, 1999, the Supreme Court held in *Martin v. Hadix,* 527 U.S. 343, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999), that the PLRA fee provisions set forth in section 1997e(d) apply to work performed after the date of enactment of the statute, even though a case may have been filed before April 26, 1996, the effective date of the PLRA. Although this case was filed on August 9, 1995 (Doc. 2), counsel for plaintiff was appointed on October 7, 1997. (Doc. 18). Therefore, any work performed by counsel in this matter occurred after the effective date of the PLRA. Thus, the PLRA attorney's fees provisions apply to counsel's request in this case.

The applicability of the PLRA to this case raises three issues: (1) Should the 25% fee shifting provision of 1997e(d)(2) apply and, if so, how much should be paid from the damage award in this case? (2) Does the PLRA cap attorney's fees at 150% of the judgment? (3) Do the PLRA

fee caps set forth in 42 U.S.C. §§ 1997e(d)(2) and (3) violate plaintiff's right to equal protection?

**1. Should the 25% fee shifting provision of 1997e(d)(2) apply and, if so, how much should be paid from the damage award in this case?**

 Defendant contends that any award of attorney's fees to plaintiff is subject to the fee shifting provision of section 1997e(d)(2):

> (2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant....

42 U.S.C. § 1997e(d)(2). A plain reading of this provision indicates that the Court must deduct from the plaintiff's judgment some portion of attorney's fees awarded plaintiff's counsel. At issue is the amount of such deduction to be applied.

Defendant requests the Court to use the full 25 percent of the judgment to offset the award of attorney's fees. Plaintiff requests the Court to exercise its discretion and disallow any offset in this case.

Neither the plain language of the statute, nor the legislative history of the attorney's fees provisions of the PLRA provides guidance in determining the appropriate percentage of the damage award to be used to offset an attorney's fee award. One court has assumed the court has discretion to determine the appropriate portion, *see Collins v. Algarin,* 1998 WL 10234 at *10 (E.D.Pa. Jan.9, 1998), while others have automatically applied the plaintiff's fee award against his damages provided that such award does not exceed 25 percent of the damages. *See Searles v. Van Bebber,* 64 F.Supp.2d 1033, 1042 (D.Kan.1999); *Roberson v. Brassell,* 29 F.Supp.2d 346, 355 (S.D.Tex.1998).

In this Court's opinion, it is reasonable to believe that Congress intended for prisoners to bear part of the responsibility for their legal representation. The language of the statute most closely resembles a contingency fee arrangement whereby an attorney is compensated out of the monetary award recovered by the client. *See Collins,* 1998 WL 10234 at *10. An apportionment of 25 percent of a damages award is a reasonable amount to require a prisoner to contribute for his legal representation. Thus, the Court will offset the amount of attorney's fees to be paid by defendant by 25 percent of the damage award to plaintiff. Twenty-five percent of the judgment of $201.00 is $50.25.

**2. Does the PLRA cap attorney's fees at 150% of the judgment?**

Defendant argues that the PLRA limits the total amount of fees that must be paid by defendant. Section 1997e(d)(2) states:

> (2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.

Defendant construes the second sentence in section 1997e(d)(2) to limit his attorney's fee liability to 150% of the judgment. Plaintiff argues that this provision is silent on the status of fee awards that exceed 150% of the judgment and that pre-PLRA section 1988 law applies in such instances.

In resolving this question of statutory construction, the Court must first look to the language of the statute itself and, if the statutory language is unclear or ambiguous, to legislative history. *Toibb v. Radloff,* 501 U.S. 157, 161, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991); *Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). *See also Walton v. Hammons,* 192 F.3d 590, 593–94 (6th Cir. 1999), citing *West Virginia Univ. Hosps., Inc. v. Casey,* 499 U.S. 83, 98, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991); *Group Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 210, 99 S.Ct. 1067, 59 L.Ed.2d

261 (1979); *Parker–Hannifin v. Commissioner of Internal Revenue*, 139 F.3d 1090, 1095 (6th Cir.1998). The intent of Congress is presumed from an expression of the ordinary meaning of the words used. *Morales v. Trans World Airlines*, 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992); *Securities Industry Ass'n v. Board of Governors*, 468 U.S. 137, 149, 104 S.Ct. 2979, 82 L.Ed.2d 107 (1984). The plain meaning of a statute is determined by reviewing "the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988). The Court must consider the PLRA's "full text, language as well as punctuation, structure and subject matter." *United States Nat'l Bank v. Independent Ins. Agents of Am., Inc.*, 508 U.S. 439, 455, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993)(internal quotations omitted). "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). *See also Dunn v. CFTC*, 519 U.S. 465, 470, 117 S.Ct. 913, 137 L.Ed.2d 93 (1997) ("[A]bsent any 'indication that doing so would frustrate Congress's clear intention or yield patent absurdity, our obligation is to apply the statute as Congress wrote it.' ").

"The meaning of a statute's words can also be 'enlightened by their context and the contemporaneous legislative history,' as well as the 'historical context of the statute.' " *Walton*, 192 F.3d at 594, quoting *Edwards v. Aguillard*, 482 U.S. 578, 594–95, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987). Where the statute is unambiguous and the plain language clear, the inquiry ends and the Court does not review underlying legislative history and intent to determine the appropriate construction. *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992); *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d

633 (1981). *See also United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ("[W]here ... the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.' ").

■ Where particular language is used in one section of a statute, but omitted from another, it is presumed that Congress did so intentionally, and not inadvertently. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994); *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983); *see also Lynch v. Johns–Manville Sales Corp.*, 710 F.2d 1194, 1197 (6th Cir.1983)("It is a fundamental rule of statutory construction that inclusion in one part of a congressional scheme of that which is excluded in another part reflects a congressional intent that the exclusion was not inadvertent."). Every word in the statute is presumed to have meaning, and the Court must give effect to all the words to avoid an interpretation which would render words superfluous or redundant. *Lopez–Soto v. Hawayek*, 175 F.3d 170, 173 (1st Cir.1999); *Ruiz v. Estelle*, 161 F.3d 814, 820 (5th Cir.1998)(interpreting a provision of PLRA concerning amendment of PLRA to grant intervention as of right to individual legislators), *cert. denied*, 526 U.S. 1158, 119 S.Ct. 2046, 144 L.Ed.2d 213 (1999). However, the Court cannot rely on literal language of the statute where such reliance would lead to absurd results or an interpretation which is inconsistent with the intent of Congress. *Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir.1995).

In the instant case, the language at issue states: "If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant." 42 U.S.C. § 1997e(d)(2). The literal language of section 1997e(d)(2) addresses only the situation where the award of attorney's fees is not greater than 150

percent of the judgment. The provision does not address the circumstance where an attorney fee award exceeds 150 percent of the judgment.

Some courts have assumed, without discussion and in dicta, that the 150% cap applies to both situations. *See Blissett v. Casey,* 147 F.3d 218, 220 (2d Cir.1998), *cert. denied,* 527 U.S. 1034, 119 S.Ct. 2392, 144 L.Ed.2d 793 (1999)(PLRA "appears (in unclear language) to provide that the balance is not to be borne by the defendant to the extent it exceeds 150 percent of the judgment."); *Collins v. Montgomery County Board of Prison Inspectors,* 176 F.3d 679, 683 (3d Cir.1999)(en banc)(same, but also recognizing that there might be some cases where a prisoner obtained extensive and important equitable relief and a modest award of damages and would not be limited by fee cap). *Cf. Boivin v. Merrill,* 66 F.Supp.2d 50 (D.Me.1999)(holding that a nominal damage award does not constitute a "monetary judgment" within the meaning of section 1997e(d)(2) and thus is not subject to the 150% cap).

One court which has specifically addressed this issue has held that attorney's fees are limited to a total award of 150% of the judgment. *Walker v. Bain,* 65 F.Supp.2d 591 (E.D.Mich.1999). The *Walker* court reasoned that nothing in the statute prohibits a court from awarding an attorney's fee in excess of 150% of the judgment. The court stated, however, that such an award would be meaningless since only two sources of funds exist to collect the award: the judgment and the defendants. The court went on to find that the amount that can be taken from the defendants is limited to 150% of the judgment and therefore any award in excess of 150% would "render the 150% cap meaningless." 65 F.Supp.2d at 598.

■ This Court respectfully disagrees with the reasoning of the *Walker* court in this regard. Applying the rules of statutory construction outlined above, the Court finds that the second sentence of section 1997e(d)(2) simply does not apply in this case where an award of attorney's fees would exceed 150% of the monetary judgment.[1] The literal and plain meaning of the words utilized by Congress address only the situation where attorney's fees are less than 150% of the judgment: "*If* the award of attorney's fees is *not greater than* 150 percent of the judgment, the excess shall be paid by the defendant." 42 U.S.C. § 1997e(d)(2)(emphasis added). The word "If" is a conditional word meaning "in the event that." Webster's Third New International Dictionary (1986), p. 1124. Construing this provision to apply in the instant case would render meaningless the word "if" because the condition which follows, to wit, an "award of attorney's fees ... not greater than 150 percent of the judgment" simply does not exist in this case. Moreover, use of the word "If" implies the existence of a second alternative, an award of attorney's fees greater than 150% of the judgment.

This interpretation is further bolstered by the provision which immediately follows. Where Congress meant to set specific limits on the amount of attorney's fees, it said so explicitly by using the language "no award shall." The provision immediately following section 1997e(d)(2) states "*No award* of attorney's fees in an action described in paragraph (1) *shall* be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18, [ the Criminal Justice Act,] for payment of court-appointed counsel...." 42 U.S.C. § 1997e(d)(3) (emphasis added). Because the provision immediately following section 1997e(d)(2) utilizes the particular language "no award ...shall" explicitly limiting the hourly rate of attorney's fees, it is presumed that the omission of such prohibitory language in section 1997e(d)(2)

---

1. 150 percent of the $201 judgment in this case would be $301.50. Although the Court has not yet set a dollar amount on any award of fees, plaintiff's request of $14,616.00 clearly exceeds this amount.

was purposeful and intentional on the part of Congress. *Russello,* 464 U.S. at 23, 104 S.Ct. 296. If Congress meant to limit attorney's fees to 150% of monetary judgment, it would have done so explicitly by the use of similar language "no award of attorney's fees shall exceed 150%." *See, e.g., U.S. v. Hanousek,* 176 F.3d 1116, 1121 (9th Cir.1999).

Such a plain meaning construction does not render "absurd" results, nor an interpretation which is inconsistent with clearly expressed legislative intent. *Dunn,* 519 U.S. at 470, 117 S.Ct. 913; *Appleton,* 62 F.3d at 801. Where an award of attorney fees exceeds 150% of the judgment and section 1997e(d)(2) second sentence does not apply, defendant remains liable for a reasonable attorney's fee under section 1988 after application of the provision offsetting a portion (up to 25%) of the judgment. Under such circumstances, the Court would apply § 1997e(d)(1)(A) and (B) in conjunction with the normal rules of law governing an award of attorney's fees under section 1988 in determining the award. This methodology is in keeping with the rule that courts must read the statute as an integrated whole where Congress amends one part. *Markham v. Cabell,* 326 U.S. 404, 411, 66 S.Ct. 193, 90 L.Ed. 165 (1945). Congress is presumed to know the former law it is amending and the consequences of such amendments on such law. *United States v. Hanousek,* 176 F.3d 1116, 1121 (9th Cir.1999). "The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning." *Union Bank v. Wolas,* 502 U.S. 151, 158, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991), citing *Toibb v. Radloff,* 501 U.S. 157, 164, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991). Thus, the fact that Congress omitted from section 1997e(d)(2) the circumstance presented in the instant case where an award of attorney's fees would exceed 150% of the judgment is not sufficient grounds for refusing to give effect to the plain meaning of the statute. *Union Bank,* 502 U.S. at 158, 112 S.Ct. 527. Where, as here, the statutory language is plain, it is the Court's job to construe the statute and not to enlarge or supplement it with language that Congress omitted or "forgot." *West Virginia Univ. Hosp. Inc. v. Casey,* 499 U.S. 83, 100, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), citing *Iselin v. United States,* 270 U.S. 245, 250–251, 46 S.Ct. 248, 70 L.Ed. 566 (1926).

Nor is such an interpretation inconsistent with any "clearly expressed legislative intention to the contrary." *Consumer Product Safety Commission,* 447 U.S. at 108, 100 S.Ct. 2051. The legislative history concerning the PLRA is sparse. However, the clear overriding intent of Congress in passing the PLRA is apparent: to deter frivolous and abusive lawsuits by prisoners, H.R. Conf. Rep. No. 378, 104th Cong., 1st Sess. 166 (1995), and to "dramatically reduce the number of meritless prisoner lawsuits," 141 Cong. Rec. S14413 (daily ed. Sept. 27, 1995)(statement of Sen. Dole).[2] *See also Hadix v. Johnson,* 143 F.3d 246, 250, 254 (6th Cir.1998), *rev'd in part on other grounds, Martin v. Hadix,* 527 U.S. 343, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999). There is absolutely no legislative history showing that Congress intended discourage attorneys from representing prisoners in civil rights cases, *see Boivin,* 66 F.Supp.2d at 51, or that a fee cap of 150% of a monetary judgment would further the objective of discouraging frivolous lawsuits. By definition, a claim that proceeds to trial and is successful enough to

---

**2.** Senator Dole, in his introductory remarks, referred to lawsuits brought over relatively minor matters such as "insufficient storage locker space, a defective haircut by a prison barber, the failure of prison officials to invite a prisoner to a pizza party for a departing prison employee, and ... being served chunky peanut butter instead of the creamy variety." 141 Cong. Rec. S14413 (daily ed. Sept. 27, 1995)(statement of Sen. Dole). The PLRA was also intended to "help restore balance to prison conditions litigation," *id.,* and to stop federal courts from "micromanaging our Nation's prisons." 141 Cong. Rec. S14418 (daily ed. Sept. 27, 1995)(statement of Sen. Hatch).

garner an award of monetary damages is not "frivolous." *See Neitzke v. Williams,* 490 U.S. 319, 328–29, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *see also Denton v. Hernandez,* 504 U.S. 25, 32, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992); *Lawler v. Marshall,* 898 F.2d 1196, 1198–99 (6th Cir. 1990). Moreover, the fact that attorney's fee provisions exist to award prevailing prisoners attorney's fees indicates a continued Congressional intent to "ensure effective access to the judicial process for persons with civil rights claims, and to encourage litigation to enforce the provisions of the civil rights acts and constitutional civil rights provisions." *Hernandez v. Kalinowski,* 146 F.3d 196, 199 (3d Cir. 1998). *See also Ortiz v. Regan,* 980 F.2d 138, 140 (2d Cir.1992); S.Rep. No. 1011, 94th Cong., 2d Sess. 2 (1976). Thus, the legislative history does not evince a contrary intent to limit attorney fees to 150% of the monetary judgment.

For these reasons, the Court finds that the plain language of section 1997e(d)(2) does not apply in this case to limit attorney's fees to 150 percent of the monetary judgment.

### 3. Do the PLRA fee caps set forth in 42 U.S.C. §§ 1997e(d)(2) and (3) violate plaintiff's right to equal protection?

Assuming, arguendo, that 42 U.S.C. § 1997e(d)(2) was construed to limit attorney's fees to 150 percent of the judgment, the Court finds that such provision, as well as the provision limiting the hourly rate of attorney's fees, 42 U.S.C. § 1997e(d)(3), violates the equal protection component of the Due Process Clause of the Fifth Amendment to the United States Constitution.

■■■ "It is well settled that the Fifth Amendment's Due Process Clause encompasses equal protection principles [of the Fourteenth Amendment]." *Mathews v. de Castro,* 429 U.S. 181, 182 n. 1, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976). *See also Weinberger v. Salfi,* 422 U.S. 749, 768–770, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). The

essence of equal protection is that similarly situated persons be treated alike. *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Classifications implicating a suspect class, such as race, or burdening a fundamental right are subject to a strict scrutiny analysis. *Id.* at 440, 105 S.Ct. 3249. *See also Clark v. Jeter,* 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988). Classifications which burden neither a fundamental right nor target a suspect class will be upheld so long as they bear a rational relationship to a legitimate objective. *Romer v. Evans,* 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996); *Heller v. Doe,* 509 U.S. 312, 319–320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993).

■■ The classification drawn by the attorney's fees provisions at issue here is between successful prisoner civil rights litigants and successful non-prisoner civil rights litigants. Sections 1997e(d)(2) and (3) limit the recovery of attorney's fees to those representing prisoners in civil rights actions, while fees to attorneys representing non-prisoners are not so limited. Plaintiff argues that the Court should apply strict scrutiny to the PLRA attorney's fees provisions because these provisions burden a prisoner's fundamental right of access to the courts by hampering his ability to seek and secure counsel for the presentation of nonfrivolous claims.

Courts have universally rejected strict scrutiny review in PLRA challenges. *See Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998), *cert. denied,* 525 U.S. 1139, 119 S.Ct. 1028, 143 L.Ed.2d 38 (1999); *Hampton v. Hobbs,* 106 F.3d 1281, 1287 (6th Cir.1997). *See also Rodriguez v. Cook,* 169 F.3d 1176 (9th Cir.1999); *Zehner v. Trigg,* 133 F.3d 459, 463 (7th Cir.1997); *Dougan v. Singletary,* 129 F.3d 1424, 1427 (11th Cir.1997), *cert. denied,* 524 U.S. 956, 118 S.Ct. 2375, 141 L.Ed.2d 743 (1998); *Gavin v. Branstad,* 122 F.3d 1081 (8th Cir.1997), *cert. denied,* 524 U.S. 955, 118 S.Ct. 2374, 141 L.Ed.2d 741 (1998). Neither prisoners

nor indigents are a suspect class. *Wilson*, 148 F.3d at 604, citing *Harris v. McRae*, 448 U.S. 297, 323, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980); *Hampton*, 106 F.3d at 1286. Nor do prisoners have a constitutional right to appointed counsel in civil cases. *Abdur–Rahman v. Mich. Dept. of Corrections*, 65 F.3d 489, 492 (6th Cir. 1995).

Contrary to plaintiff's contention, a strict scrutiny analysis does not apply in this case because sections 1997e(d)(2) and (3) do not burden a prisoner's fundamental right of access to the courts. Although access to the courts is a fundamental right, *Wilson*, 148 F.3d at 605, the limitation on attorney's fees does not deny inmates "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), quoting *Bounds v. Smith*, 430 U.S. 817, 825, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The attorney's fees limitations do not preclude prisoners from filing and prosecuting their cases, the essence of this right. 518 U.S. at 351–53, 116 S.Ct. 2174. The right espoused in *Lewis* is described as one enabling prisoners to present their grievances to the courts. *Id.* at 360, 116 S.Ct. 2174. It does not, however, encompass the ability "to litigate effectively once in court." 518 U.S. at 354, 116 S.Ct. 2174. While the PLRA provisions at issue may make it more difficult to obtain representation by private counsel, they do not deny prisoners the fundamental right of access to the courts.

 Because the PLRA fee provisions neither target a suspect class nor implicate a fundamental right, the Court must uphold the attorney's fees provisions if the distinction drawn between successful prisoner civil rights litigants and successful non-prisoner civil rights litigants is rationally related to a legitimate government interest. *See Hampton v. Hobbs*, 106 F.3d 1281, 1287 (6th Cir.1997), citing *United States v. Kras*, 409 U.S. 434, 446, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973); *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). The provisions are entitled to a presumption of constitutionality, *see Heller*, 509 U.S. at 319, 113 S.Ct. 2637; *City of Cleburne*, 473 U.S. at 440, 105 S.Ct. 3249, and will be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller*, 509 U.S. at 320, 113 S.Ct. 2637, quoting *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). *See also Sullivan v. Stroop*, 496 U.S. 478, 485, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990). Nevertheless, a distinction "whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational" will be found violative of the equal protection clause. *City of Cleburne*, 473 U.S. at 446, 105 S.Ct. 3249, citing *Zobel v. Williams*, 457 U.S. 55, 61–63, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982); *United States Dept. of Agriculture v. Moreno*, 413 U.S. 528, 535, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973).

As discussed previously, there is no legislative history identifying Congress's purpose in implementing the attorney's fees provisions in question. Nevertheless, it is clear that Congress's overall purpose in enacting the PLRA was to reduce the filing of frivolous lawsuits by prisoners. *See* p. 852 and n. 2, *supra.* While this goal in itself is clearly a legitimate one, *see Wilson*, 148 F.3d at 604, it is difficult to see how this goal is rationally advanced by limiting attorney's fees to successful prisoner plaintiffs.

A complaint is "frivolous" when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams*, 490 U.S. 319, 328–29, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *see also Denton v. Hernandez*, 504 U.S. 25, 32, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992); *Lawler v. Marshall*, 898 F.2d 1196, 1198–99 (6th Cir.1990). Frivolous prisoner civil rights cases are dismissed at the pre-service screening stage and on summary judgment. Pursuant to the PLRA, the

Court must sua sponte review all prisoner complaints to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. §§ 1915A(a), (b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997). This occurs "before docketing" or "as soon as practicable after docketing" and throughout the litigation process. *Id.* By the time a prisoner's case proceeds to a trial on the merits, several judicial determinations have been made that the case is not frivolous. Thus, where a prisoner proceeds to trial, is successful, and is awarded attorney fees, his case by definition is not "frivolous."

There is no rational connection between limiting attorney's fees in such cases and the goal of deterring the filing of frivolous cases which never make it past the screening stage in any event. The only conceivable purpose served by the attorney's fees cap is to limit the number of attorneys willing to represent prisoners because of reduced financial incentives. But this purpose smacks of a desire to harm prisoners, a politically unpopular group, which is clearly not a legitimate governmental interest. *Cleburne*, 473 U.S. at 447, 105 S.Ct. 3249; *Weinberger v. Salfi*, 422 U.S. 749, 772, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). The limitation on attorney's fees set forth in sections 1997e(d)(2) and (3) is simply unrelated in any rational way to limiting the filing of frivolous prisoner lawsuits. "Any relationship between an award of attorney fees to successful prisoner plaintiffs and the initial filing of frivolous civil rights suits is, at best, so attenuated as to be irrational." *Walker v. Bain*, 65 F.Supp.2d 591, 602 (E.D.Mich.1999)(holding that fee cap in

§ 1997e(d)(2) is not rationally related to goal of deterring frivolous lawsuits).

The Court is aware that the Ninth Circuit in *Madrid v. Gomez*, 190 F.3d 990 (9th Cir.1999) held to the contrary, finding that the attorney's fees limitations set forth in the PLRA are rationally related to curtailing frivolous prisoners' suits. The *Madrid* court stated that "it is certainly conceivable that, because of significant potential gains and low opportunity costs, prisoners generally file a disproportionate number of frivolous suits as compared to the population as a whole." 190 F.3d at 996. While this statement is undoubtedly true, it is irrelevant. As explained above, frivolous lawsuits are dismissed by the Court early in the litigation process and never make it to trial, let alone to the point where attorney's fees are requested and awarded. The *Madrid* court fails to explain the connection between the attorney's fees caps and deterring frivolous prisoner filings.

Like the *Madrid* court, the district court in *Collins v. Algarin*, No. 95–4220, 1998 W.L. 10234, at *9 (E.D.Pa. Jan.9, 1998)(unpublished) upheld the attorney's fees provision of section 1997(d) against an equal protection challenge. The Third Circuit, sitting en banc, affirmed this decision by an equally divided court. *See Collins v. Montgomery County Bd. of Prison Inspectors*, 176 F.3d 679, 686 (3d Cir.1999)(en banc).[3] The district court in *Collins*, like *Madrid*, looked to Congress's objective in the PLRA of deterring frivolous lawsuits. For the reasons discussed above, however, this Court declines to follow the decisions in *Madrid* or *Collins*. Rather, the Court is in agreement with the rationale set forth in *Walker v. Bain*, 65 F.Supp.2d at 602–603 as it relates to this issue.

A second conceivable reason set forth for the imposition of the attorney's fees cap in prisoner civil rights cases is the protection of the public purse, from which attorney's fees under § 1988 are generally

---

**3.** Under the law of the Third Circuit, decisions of a divided en banc court are entitled to no weight. *See Tunis Bros. Co., Inc. v.*

*Ford Motor Co.*, 763 F.2d 1482, 1501 (3d Cir.1985), *vacated on other grounds*, 475 U.S. 1105, 106 S.Ct. 1509, 89 L.Ed.2d 909 (1986).

awarded.[4] Although protection of the public fisc is a legitimate goal, such goal cannot be achieved "by arbitrarily singling out a particular class of persons to bear the entire burden...." *Walker*, 65 F.Supp.2d at 604 (citation omitted). The *Walker* court, after reviewing decisions of the Supreme Court and lower courts which prohibited, on equal protection grounds, the conservation of public funds through the disparate treatment of similarly situated persons, concluded:

> There is no defensible interest served by focusing on th[e] distinction between prisoners and nonprisoners, since it bears no relationship whatever to the purpose of either the attorney fee provision of § 1988 or the cap on such fees provided by § 1997e(d)(2). The only manner in which the distinction between prisoners and nonprisoners relates to the goal of protecting the public fisc is by making prisoners (or the pro bono attorney) bear the entire extent of that burden for no other reason than the fact that they are prisoners (or attorneys who have undertaken to represent prisoners). Such an arbitrary discrimination, as the cases discussed above demonstrate, is not a permissible means of guarding the state's purse. Accordingly, I conclude that there is no rational relationship between the distinction made by § 1997e(d)(2) and the purported goal of protecting the public fisc.

65 F.Supp.2d at 604–605 (internal quotations omitted), citing *Plyler v. Doe*, 457 U.S. 202, 227, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982); *Shapiro v. Thompson*, 394 U.S. 618, 633, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Rinaldi v. Yeager*, 384 U.S. 305, 309–310, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); *Silbowitz v. Secretary of Health, Educ. & Welfare*, 397 F.Supp. 862, 867 (S.D.Fla.1975), *summarily aff'd. sub nom. Califano v. Silbowitz*, 430 U.S. 924, 97 S.Ct. 1539, 51 L.Ed.2d 768 (1977); *West-*

*berry v. Fisher*, 297 F.Supp. 1109, 1115 (D.Me.1969).

This Court agrees. Sections 1997e(d)(2) and (3) are not rationally related to the goal of protecting the public purse because that purpose is accomplished by arbitrarily singling out a particular class of persons, prisoners, to bear the entire burden of achieving the goal. Such arbitrary discrimination is an impermissible means of protecting the public fisc. "[W]hen Congress arbitrarily saddles one group with the burden of protecting the public fisc, it acts irrationally." *Id.*

Congress chose to award attorney fees to successful civil rights litigants by enacting § 1988. Congress cannot now deny fees to some successful civil rights plaintiffs simply because they also hold the status of prisoner. The Court cannot conceive of any other rational basis or reason for awarding attorney's fees for successful prisoner civil rights litigant on an unequal basis with other successful civil rights plaintiffs.

Accordingly, the Court finds that the fee caps set forth in sections 1997e(d)(2) and (3) are not rationally related to any legitimate governmental interests and violate the equal protection component of the Fifth Amendment. Thus, plaintiff is entitled to an award of attorney's fees without regards to the limits set forth in those provisions.

## III. Attorney's Fees Award

Plaintiff requests an award of attorney fees of $14,616.00. Pursuant to 42 U.S.C. § 1988:

> In any action or proceeding to enforce a provision of section [ ] ... 1983 ... of this title, ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs.

---

4. Because § 1983 only permits suits against individuals acting under color of state law, attorney's fees are generally awarded against public officials and, by extension, the public treasury of the states. *See Walker*, 65 F.Supp.2d at 604 and n. 6.

42 U.S.C. § 1988(b). In addition, plaintiff's request for attorney's fees is governed by section 803(d) of the PLRA which requires that the fee request be directly and reasonably incurred in proving a violation of plaintiff's rights and that the fee be proportional to plaintiff's relief. 42 U.S.C. § 1997e(d)(1); *see Walker v. Bain,* 65 F.Supp.2d at 597; *Clark v. Phillips,* 965 F.Supp. 331 (N.D.N.Y.1997).

Section 1997e(d)(1)(A) requires that the fee be "directly and reasonably incurred in proving an actual violation of the plaintiff's rights." 42 U.S.C. § 1997e(d)(1)(A). In the instant case, plaintiff proved by a preponderance of the evidence that his Eighth Amendment rights under the Constitution were violated. A review of the attorney's fees application submitted by counsel for plaintiff shows that the time spent by counsel was incurred in proving and seeking redress for that violation. Therefore, the Court finds that the attorney's fees sought were directly and reasonably incurred in proving plaintiff's constitutional rights were violated. *See Clark,* 965 F.Supp. at 334, citing *Weaver v. Clarke,* 933 F.Supp. 831, 836 (D.Neb.1996).

■ Section 1997e(d)(1)(B) further requires that the amount of the fee be "proportionately related to the court ordered relief for the violation" or that "the fee was directly and reasonably incurred in enforcing the relief ordered for the violation." 42 U.S.C. § 1997e(d)(1)(B)(i) & (ii). The Court has found only a few reported decisions construing this provision. One court has found that this "proportionality" requirement merely codifies pre-existing law regarding attorney's fees under 42 U.S.C. § 1988. *See Boivin v. Merrill,* 66 F.Supp.2d 50, 52 (D.Me.1999). In *Boivin,* the Court found that an award of attorney fees of $3,892.50 was reasonable and appropriate even though nominal damages of only $1.00 was awarded. The court, relying on the rationale set forth in the First Circuit in *O'Connor v. Huard,* 117 F.3d 12, 18 (1st Cir.1997) and *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), found the fees requested to be "eminently reasonable" in view of "the deterrent impact of the litigation on those who otherwise would violate a prisoner's constitutional rights and the need to provide attorneys with an incentive to represent litigants seeking to vindicate such rights." 66 F.Supp.2d at 52.

In *Clark v. Phillips,* 965 F.Supp. 331, 334 (N.D.N.Y.1997), the court held that an award of $7921.96 in attorney's fees was "proportionately related" to the jury award of $10,000.00 in damages. The court found that the plaintiff's fee award was 79% of the judgment awarded and did not appear disproportional to the judgment.

In *Searles v. Van Bebber,* 64 F.Supp.2d 1033, 1042 (D.Kan.1999), the court, without explanation or analysis, found that a fee award $30,621.83 was sufficiently proportional to jury award of actual damages of $3,650 and punitive damages of $42,500.

In determining proportionality in the instant case, the Court finds that a dollar for dollar comparison of attorney's fees to the monetary judgment awarded is not appropriate in a case such as this where despite an award of nominal damages, plaintiff nevertheless obtained a significant vindication of his constitutional rights. Rather, a comparison of the fees requested to the *Farrar* factors, to wit: the extent of relief, the significance of the legal issue on which plaintiff prevailed, and the public purpose served, 506 U.S. at 122, 113 S.Ct. 566, is an appropriate measure of proportionality. *See Boivin,* 66 F.Supp.2d at 52. When viewed in this light, plaintiff's attorney's fees request is proportionally related to plaintiff's relief. As explained above, at pp. 846–48, *supra,* plaintiff vindicated an important constitutional right to be free from cruel and unusual punishment. Plaintiff also obtained an award of punitive damages which sent a significant message to prison guards and officials that the use of excessive force against inmates is prohibited. The award of punitive damages will also undoubtedly serve to deter future

similar misconduct. Thus, the Court finds that the relief obtained by plaintiff, to wit, an award of monetary damages, the vindication of an important constitutional right, and the deterrence effect of the punitive damages award, is proportionally related to the attorney's fees requested.

■ Finding that plaintiff has satisfied the requirements of section 1997e(d)(1)(A) and (B), the Court must now determine the amount of the fee to be awarded.[5] The recognized method for calculating an award of attorney's fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The Court must consider the degree of success obtained by plaintiff in determining an appropriate award of attorney's fees. *Id.* at 436, 103 S.Ct. 1933. *See also Farrar*, 506 U.S. at 114, 113 S.Ct. 566; *Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1169 (6th Cir.1996); *Cramblit v. Fikse*, 33 F.3d 633, 635 (6th Cir. 1994). There is no decisive formula or rule for determining the degree of success achieved. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436–37, 103 S.Ct. 1933. Where the Court decides to eliminate or reduce the hours of service documented by counsel's affidavit, it must identify the hours eliminated and articulate its reasons for any such reduction. *Northcross v. Bd. of Educ. of Memphis City Schools*, 611 F.2d 624, 636–37 (6th Cir. 1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). Hourly rates should not exceed the market rate necessary to encourage competent lawyers to undertake representation. *Reed v. Rhodes*, 179 F.3d 453, 472–73 (6th Cir. 1999); *Coulter v. Tennessee*, 805 F.2d 146, 150 (6th Cir.1986). *See also Blum v. Sten-*

*son*, 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)(a reasonable attorney fee is one that is adequate to attract competent counsel, yet does not produce a windfall to attorneys).

Plaintiff filed this action pro se. On October 7, 1997, counsel Pundzak was appointed to represent plaintiff in anticipation of this matter being tried to a jury on a claim of use of excessive force claim against defendant Guard and a claim of failure to protect against defendant Gainey. In preparation for trial, counsel conducted at least seven discovery depositions, defended plaintiff's deposition, served and answered discovery requests, and successfully opposed defendants' motion for summary judgment. After a three day jury trial, a verdict was returned for defendant Gainey on plaintiff's Eighth Amendment deliberate indifference claim, but for plaintiff against defendant Guard on plaintiff's Eighth Amendment excessive force claim.

Counsel performed these tasks ably and professionally. She submits an affidavit documenting an expenditure of 91.35 hours in the representation of plaintiff, excluding the time spent on the fee application. Attorney Pundzak requests an hourly rate of $160.00. Defendant does not dispute that plaintiff is a prevailing party in this matter. With the exception of the issues raised in Sections I and II above, defendant does not take issue with the hours expended or rate requested by Attorney Pundzak. Nor does defendant object to reimbursement of the costs expended.

■ After a careful review of the affidavit submitted by counsel in support of her request for attorney's fees, the Court finds that $14,616.00 is a reasonable attorney's fee award in this case. The Court accepts the hourly rate of $160.00 for Ms. Pundzak as this rate was previously approved by the Court in *United States ex rel. Pedicone v. Mazak Corp.*, 807 F.Supp.

---

5. As noted above, defendant concedes that plaintiff is a prevailing party under 42 U.S.C.

§ 1988. See p. 845, *supra*.

1350 (S.D.Ohio 1992)(Beckwith, J.). The Court also finds the time spent by Ms. Pundzak to be reasonable. The Court calculates Ms. Pundzak's her legal time to be 91.35 hours (at $160.00 per hour) resulting in an award of $14,616.00. The Court declines to reduce the lodestar amount despite plaintiff's lack of success on the claim against defendant Gainey. There can be little doubt that plaintiff's excessive force and deliberate indifference claims involved "a common core of facts" and were based on "related legal theories" and that much of counsel's time "was devoted generally to the litigation as a whole." *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933. *See also Thurman,* 90 F.3d at 1169 ("When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced."). In addition, the Court awards plaintiff an award of costs of $870.28. *See Northcross,* 611 F.2d at 639. Accordingly, the Court determines that plaintiff's request for attorney fees is **GRANTED** in the amount of $14,616.00 and costs of $870.28. The attorney's fee awarded is offset by $50.25 (25% of the judgment), § 1997e(d)(2), p. 849 *supra,* resulting in a total award of $14,565.75.

Finally, plaintiff requests that he be permitted to submit an application for additional time and expenses through the close of the case. Plaintiff's request is hereby **GRANTED.** *See Northcross,* 611 F.2d at 637; *Weisenberger v. Huecker,* 593 F.2d 49 (6th Cir.1979), *cert. denied,* 444 U.S. 880, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979). *See also Hernandez v. Kalinowski,* 146 F.3d 196 (3d Cir.1998)(fees for preparing and litigating motion requesting fees and costs are recoverable under the PLRA).

**IT IS SO ORDERED.**